UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO DEL CASTILLO,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL LONGSHORE & WAREHOUSE UNION,<br><br>Defendant. | Case No. 16-cv-03903-WHO<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 23 |

Defendant International Longshore and Warehouse Union ("ILWU") moves for summary judgment on plaintiff Antonio Del Castillo's claims for breach of the duty of fair representation and breach of the collective bargaining agreement on the ground that plaintiff's claims are not properly alleged against ILWU or are barred as a matter of law. Although Del Castillo opposes the motion, he offers no evidence establishing that there are material questions of fact in dispute. The ILWU's motion is GRANTED.

**BACKGROUND**

I.  **PROCEDURAL BACKGROUND**

On July 12, 2016, plaintiff (proceeding *pro se*) filed this case against ILWU and the Pacific Maritime Association ("PMA") alleging that defendants breached their collective bargaining agreement ("CBA") and the union violated its duty of fair representation ("DFR") based upon the handling of his grievance by the local affiliate of ILWU, Local 34. Dkt. No. 1. The grievance and plaintiff's Complaint here center around Del Castillo's assertions that the "request" system for assigning work used by Local 34 and PMA had a discriminatory effect and impact on Del Castillo and other older workers and that Local 34 and PMA breached the CBA by failing to implement a new system. Complaint at 3-4. He also argues in this case that his grievance raising these issues

was "not processed" fairly.

The parties stipulated to the dismissal of PMA. Dkt. No. 21. ILWU filed a motion for summary judgment on March 15, 2017. Dkt. No. 22. Plaintiff secured counsel and opposes that motion, arguing that his claims for breach of contract and violation of the duty of fair representation should proceed to trial. Dkt. Nos. 29, 31.

## II. FACTUAL BACKGROUND

Plaintiff is a marine clerk with multiple decades of experience who has not been promoted beyond his original position as "clerk," allegedly due to the job assignment system used by ILWU and PMA that is not based on merit but is based on "connections." Declaration of Jonathan Matthews [Dkt. No. 32] ¶ 2.[1]

ILWU relies on the Declaration of Allen Fung [Dkt. No. 24], the Secretary-Treasurer of ILWU Local 34 ("Local 34"), to explain the relationship between clerks like Del Castillo, ILWU, Local 34, and employers like PMA. The majority of Local 34's members are marine clerks who track the movement of cargo into, around, and out of maritime facilities. Fung Decl. ¶ 5. The workers in Local 34 are employed by PMA at ports along the West Coast. *Id*.

The CBA covering Local 34 and PMA is the Pacific Coast Longshore and Clerks' Agreement ("PCL&CA" or "CBA") which itself is made up of two contracts; the Pacific Coast Longshore Contract Document ("PCLCD") and the Pacific Coast Clerks' Contract Document ("PCCCD"). *Id*. ¶ 6. The relevant PCCCD at issue was effective from 2008-2014. It was amended by a July 2014 MOU and re-executed. *Id*. ¶ 7, & Exs. B & C. Section 17 of the PCCCD establishes "an exclusive" grievance and arbitration process for resolving disputes arising under the PCL&CA. *Id*.

According to Fung, the PCCCD governs clerk work with PMA and is administered at the

---

[1] In plaintiff's counsel's declaration, plaintiff is referred to as a "longshoreman." Matthews Decl. ¶ 2. He is also, however, a registered marine clerk. Declaration of Amy Endo [Dkt. No. 26], Ex. B. (Del Castillo Depo. Trans.) at 37:10-15. Local 34 has members who are both longshoremen and marine clerks. Fung Decl. ¶ 5. ILWU objects to the Matthews declaration – the only source of evidence put forth by plaintiff – for lack of personal knowledge. Dkt. No. 33 at 6. However, even if I accept the representations made by plaintiff's counsel, as discussed below, plaintiff still has not met his burden to present evidence creating material disputes of fact precluding a grant of summary judgment to defendant.

2

local level by Local 34 and PMA, who act jointly through the "Joint Port Labor Relations Committee" (JPLRC). *Id.*¶ 8. The JPLRC maintains and operates the dispatch hall, decides questions regarding dispatch, and investigates and adjudicates contract grievances. *Id*. ¶ 9. ILWU does not play any role in operating the Local 34 dispatch hall and it does not play any role in "establishing or enforcing the means and methods of dispatching jobs to Local 34 members." *Id*. ¶ 10.

Under the prior "request system," in operation through February 24, 2017, PMA could request individual clerks by name to work with them on a daily or weekly basis. The remaining slots were assigned to clerks on the basis of who was available and who had worked the least in a given month. Fung Decl. ¶ 10. The system gave individuals who were "requested" better access to jobs with better hours or working conditions. *Id*. In 2014, Local 34 "advocated" with PMA to establish a new "steady" system, eliminating the request system and resulting in the 2014 Letter of Understanding ("2014 LOU"). *Id*. ¶ 11. The 2014 LOU, however, was not implemented by PMA. After a series of disputes were arbitrated through the grievance mechanism during three separate arbitration proceedings, the "steady" system became operational as of February 25, 2017. *Id*. ¶¶ 12-13.

The only grievance filed by Del Castillo related to the hiring system was handed to Fung by Del Castillo on February 11, 2016. *Id*. ¶ 14. That grievance – dated February 10, 2016 and attached to Del Castillo's Complaint – complains that PMA and Local 34 had yet to implement the new steady system and were still relying on the old, discriminatory request system. Dkt. No. 1 at 6. Del Castillo also accused PMA and Local 34 of discrimination based on age and seniority, presumably under the "request system" that was still operating at that time. *Id*. Finally, Del Castillo complained that the old system violated the Clerk Work Opportunity Guarantee. *Id*.

Del Castillo's grievance was considered by the Local 34 Executive Committee on April 12, 2016. Fung Decl., ¶ 14. Despite having notice, Del Castillo did not attend that meeting. The Executive Committee directed that his grievance would not be moved forward "because Local 34 was already prosecuting PMA for noncompliance with the 2014 LOU in order to eliminate the request system, and there was no evidence to support Plaintiff's other allegations." *Id*. ¶ 14.

3

Additionally, Del Castillo filed a charge with the National Labor Relations Board ("NLRB") on March 29, 2016, alleging that Local 34 and PMA violated the National Labor Relations Act by failing to eliminate the request system and continuing to dispatch employees based on favoritism. Fung Decl., Ex. J. After conducting an investigation, the NLRB dismissed the charge based on insufficient evidence. Endo Decl. ¶ 2, Ex. A.

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id*. at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

**DISCUSSION**

ILWU moves for summary judgment arguing that: (i) ILWU cannot be liable for the complained-of actions that were taken by Local 34; (ii) Del Castillo failed to exhaust his DFR claim as to race discrimination under the prior request system, and that claim as well as any age discrimination claims are time-barred; (iii) plaintiff has failed to exhaust any claims regarding the new steady system; and (iv) no reasonable jury could find that ILWU or Local 34 violated its DRF

4

by not pursuing Del Castillo's February 2016 grievance.

In his Opposition, Del Castillo does not address the multiple grounds for summary judgment asserted by ILWU. Instead he simply contends that he has stated a breach of contract claim and a breach of the DFR because: (i) defendant did not "adequately fight to replace the request system"; (ii) the prior system was unfair and discriminatory; (iii) the new 2014 "steady system" for assigning clerk work has "no testing standard or procedures for new employment positions"; and (iv) because ILWU has not provided him a copy of the "new agreement," Del Castillo has been prevented from bringing a grievance challenging the new "steady agreement." Oppo. 4-5; Matthews Decl. ¶¶ 4-5. Plaintiff did not submit any evidence in opposition to demonstrate the existence of a dispute of material fact. Instead, plaintiff's counsel asserted that, "Del Castillo is able to provide instances of discrimination under the old request system and the current steady system if needed by the Court." *Id*., ¶ 6.

## I. CLAIMS AGAINST DEFENDANT ILWU

ILWU moves for summary judgment because Del Castillo has sued the wrong defendant; the claims asserted here challenge the conduct of Local 34, not ILWU (the sole remaining defendant). According to Fung, the Secretary-Treasurer of Local 34, Local 34 is a "distinct entity" from ILWU, with separate officers, constitutions, and bylaws. Fung Decl., ¶ 3. The grievance process invoked by Del Castillo is managed by Local 34. It is Local 34 who determines whether or not to pursue a complaint based on a grievance at the Joint Port Labor Relations Committee. *Id*. ¶ 4.

According to ILWU's representative, ILWU is a labor organization comprised of the voluntarily affiliated, autonomous local unions. Declaration of Russell Bargmann [Dkt. No. 25], ¶ 3. ILWU does not share offices with or station its representatives in local offices, including the offices of Local 34. *Id*. ILWU's representative declares that while ILWU serves as the "exclusive bargaining representative" for the PCL&CA, the terms of that CBA are administered and enforced by the JPLRC and ILWU is not responsible for administering the CBA at the local level. *Id*. ¶ 8. ILWU was not involved in any way in the processing of Del Castillo's grievance. *Id*. ¶ 11.

Generally, common law agency principles are applied to determine whether an

5

International can be liable for the actions of its local affiliate. *Laughon v. Int'l All. of Theatrical Stage Employees, Moving Picture Technicians, Artists & Allied Crafts of the United States & Canada*, 248 F.3d 931, 935 (9th Cir. 2001). The question turns on "whether the local engages in illegal conduct in furtherance of its role as an agent of the international," and if so "the international will be liable for the local's actions," or "the local exercises considerable autonomy in conducting its affairs," and if so "it cannot be regarded as an agent of the international, and the international accordingly cannot be held liable under an agency theory for the local's actions." *Id*. In determining whether such an agency exists, the terms of the relative entities' constitutions are instructive but so is the "actual relationship" between the entities at issue. *Id*. "To analyze the actual relationship, [the court] consider[s] the local's election of its own officers, ability to hire and fire its own employees, maintenance of its own treasury and independent conduct of its daily business as determinative factors." *Id*. Whether or not the local is free to negotiate its own CBA without oversight from the International is also significant. *Id*.

ILWU argues that looking to these factors it cannot be held liable for the conduct of Local 34 in: (i) adopting or using the request system; (ii) failing to replace the request system; or (iii) for processing Del Castillo's grievance. Mot. 8-10. Del Castillo does not address whether ILWU is the appropriate defendant in his Opposition.

### A. Adoption, Use, and Failure to Replace Request System

ILWU admits that it is responsible for negotiating the CBA on behalf of the Local and is the "CBA agent." Bargmann Decl. ¶ 8. Local 34's Constitution and By-Laws provide that Local 34 can *only* enter into written agreements with employers "covering the conditions of employment of its members" after the agreement is submitted to the membership for ratification. However, any "agreement negotiated must have the approval of the International" before it is referred to the local for ratification. Fung Decl., Ex. A at Article X, Section 1A. & 1B. Therefore, to the extent the "request" system was adopted by a written agreement with PMA, ILWU could be viewed as having played a role in its adopting and bears some responsibility for it.

As to the adoption of the 2014 LOU, there is no specific identification as to whether Local 34 or ILWU negotiated the 2014 LOU. Local 34's representative says only that "Local 34

6

advocated" for its elimination. Fung Decl. ¶ 11. While, according to Local 34's representative, the 2014 LOU "is part of the current ILWU-PMA coast-wide collective bargaining agreement," Local 34 is the *only* union signatory on the 2014 LOU.

Because ILWU is the "collective bargaining agent," any written agreements with employers are subject to ILWU's express approval, *and* the 2014 LOU superseding the request system became part of the CBA, ILWU might bear some responsibility for the "request" system and the date of its replacement. *Cf. Moore v. Local Union 569 of Int'l Bhd. of Elec. Workers*, 989 F.2d 1534, 1543 (9th Cir. 1993), as amended (June 28, 1993) ("without evidence that it instigated, supported, ratified or encouraged the Local's activities or that the Local acted pursuant to its agreement with the International, there was no agency relationship as a matter of law. Moreover, constructive knowledge of the Local's possibly illegal activity does not impose on the International a legal duty to intervene."). But Del Castillo presents no facts establishing how the request system was initially adopted, what its governing documents are, or any other facts indicating that that the request system was the product of a written agreement between Local 34 and PMA that was ratified or otherwise adopted by ILWU. He presents no facts showing that ILWU played any role in negotiating the 2014 LOU or that ILWU approved the 2014 LOU. The only evidence is that ILWU does not play any role in "establishing or enforcing the means and methods of dispatching jobs to Local 34 members." Bargmann Decl. ¶ 10. On this record, there are no facts to support holding ILWU liable for the adoption and use of the request system or the replacement of that system.

As to Del Castillo's allegation that not enough was done to get PMA to adhere to the 2014 LOU, the only evidence before me is that Local 34 was the entity attempting to enforce the 2014 LOU. According to ILWU's representative, ILWU plays no role in administering and enforcing the CBA at the local level. Bargmann Decl. ¶ 8. Local 34 is also the only union party listed as participating in the arbitration proceedings, where it attempted to force PMA to comply with the 2014 LOU. Fung Decl., Exs. E-G. There simply are no facts on the record before me showing that ILWU had any role in attempting to get PMA to comply with the 2014 LOU.

Based on the record, there are no facts presented that would make ILWU liable for the

7

adoption, use, or maintenance of the request system or the delay in getting PMA to adhere to the steady systems adopted in the 2014 LOU.

### B. Processing of the Grievance

As to the DFR claim, there is no evidence that ILWU played any role whatsoever in processing Del Castillo's grievance. Moreover, plaintiff admitted in his deposition that he was not contending that ILWU separately breached a duty of fair representation to him, only that Local 34 did. Depo. Tr. 191:14-23.[2]

As such, ILWU's motion for summary judgment on Del Castillo's breach of contract and DFR claims is GRANTED. And even if ILWU could be liable to plaintiff on his claims, its motion for summary judgment must be granted for the additional reasons discussed below.

## III. CHALLENGE TO THE REQUEST SYSTEM

ILWU argues that it is entitled to summary judgment on Del Castillo's claims related to the "request system" because some of the claims were not exhausted and no reasonable jury could determine that ILWU breached its DFR or the CBA by adopting and using the request system or in light of the efforts to replace it.

### A. The Claim of Discrimination Based on Race Was Not Exhausted

Del Castillo did not exhaust any racial discrimination claim. Read broadly, his February 2016 grievance alleged: (i) that Local 34 did not do enough to get PMA to honor the 2014 LOU and allowed PMA to continue to use the "discriminatory" request system; and (ii) the request system discriminated against senior/older workers on the basis of age. Compl., Ex. 1.[3] There was no mention of race. Del Castillo's Complaint repeats these allegations, focusing on the impact of the request systems on older, senior workers. However, the Complaint also mentions in passing

---

[2] Depo Tr. 191:14-24 "Q·And, when you say the union breached its duty of fair representation to you, are you referring to Local 34? A·· Yes. ·Q· · Are you alleging, in this action, that the ILWU International somehow breached its duty of fair representation to you? A· · International? Q· · Mm-hm. A· · No.· My Local.· Local and PMA."

[3] Del Castillo also alleged that the failure to implement the 2014 LOU also resulted in violation of the "Clerk Work Opportunity Guarantee," but in his deposition, Del Castillo clarified that he was not challenging the CWOG in this case. Depo. Tr. 170:1 – 17. Del Castillo does not mention the CWOG in his opposition.

8

that request system "advocates age discrimination, racial preference violations seniority in promotions, upgrades transfers, overtime volunteer weekend, etc." Compl. at 4.

"Generally, members of a collective bargaining unit must first exhaust contractual grievance procedures before bringing an action for breach of the collective bargaining agreement" or for breach of DFR. *Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990). Under the CBA here, section 17.15 sets out the grievance process for all disputes arising under that agreement. Fung Decl. 7, Ex. B § 17.15.

To the extent Del Castillo is attempting to state a claim that the request system promoted or otherwise allowed discrimination based on race, the 2016 grievance did not assert that claim and he has not exhausted it.

### B. Local 34's Conduct In Adopting and Using the Request System Was Not Discriminatory or in Bad Faith

In the Ninth Circuit, a two-step analysis is used to determine whether a union has breached its duty of fair representation. *Burkevich v. Air Line Pilots Ass'n, Int'l*, 894 F.2d 346, 349 (9th Cir. 1990). First, a determination is made as to whether the alleged union misconduct involved the union's judgment or whether it was "procedural or ministerial." *Id*. If procedural or ministerial, "then the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith." *Id*. If "the conduct involved the union's judgment, then 'the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith.'" *Id*. (quoting *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 636 (9th Cir.1988)); *see also Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991) ("the final product of the bargaining process may constitute evidence of a breach of duty only if it can be fairly characterized as so far outside a 'wide range of reasonableness,' that it is wholly 'irrational' or 'arbitrary'.").[4]

Here, the adoption and use of the request system was a matter of judgment. No evidence is presented why it was adopted or maintained, but Local 34's representative admits that under the

---

[4] The union's conduct is "arbitrary" if it is "without rational basis" or is "egregious, unfair and unrelated to legitimate union interests." *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985) (internal quotations omitted).

9

system "certain individuals" had better access to premier jobs and was "unfair" in that sense. Fung Decl. ¶¶ 10-11. Unfairness, however, does not mean it was discriminatory against a class of workers or that it was adopted in bad faith. Del Castillo fails to present any arguments, much less evidence, why the adoption and use of the request system was permitted, how it caused age discrimination, or that it was adopted by the union in bad faith. Plaintiff's counsel's offer to "provide specific instances of discrimination under the old request system" is simply insufficient to create a material dispute of fact as to discrimination or bad faith by ILWU. Mathews Decl. ¶ 6. On this record, Del Castillo has not met his burden.

### C. Local 34 Undertook Reasonable Efforts to Eliminate the Request System

ILWU also argues that once it was decided to replace the request system with a fairer system, Local 34 undertook all reasonable efforts to do so, including advocating for the 2014 LOU and then pursuing three arbitrations in order to force PMA's compliance with the 2014 LOU. Fung Decl., Exs. E-G. Those efforts took time and were ultimately successful as of February 2017. Fung Decl. ¶ 13. In opposition, Del Castillo does not identify any actions by ILWU or Local 34 that could support a conclusion that Local 34 or ILWU acted arbitrarily, discriminatorily, or in bad faith with respect to the attempts to implement the 2014 LOU. He has failed to show that there are any material disputes of fact to counter ILWU's showing that the adoption and use of the former request system was discriminatory or done in bad faith.

Therefore, summary judgment is GRANTED to ILWU on Del Castillo's claims with respect to the request system that it discriminated based on age/seniority and that ILWU did not do enough to replace it.[5]

### IV. CHALLENGE TO THE NEW STEADY SYSTEM

In an abundance of caution, ILWU also explains why, to the extent Del Castillo's Complaint can be read as challenging the new steady system, adopted under the 2014 LOU and implemented in February 2017, that challenge also fails.[6]

---

[5] I need not reach ILWU's arguments that Del Castillo's complaints based on age discrimination and failure to implement the 2014 LOU are barred by the applicable statutes of limitations.

[6] While in his Opposition, plaintiff seems to assert claims that *both* the old request system and the

10

United States District Court
Northern District of California

1   ILWU points out that Del Castillo did not make any challenge to the steady system in his

2   2016 grievance. That claim, therefore, has not been exhausted. In response and at the oral

3   argument, Del Castillo argued that because he had not been given a copy of the "new contract"

4   which followed the 2014 LOU, he has no information on how to submit a grievance under the

5   CBA currently in place and should therefore be excused from exhausting that process.

6   However, as discussed above, the PCCCD enacted in 2008 and amended in 2014 is the

7   current CBA. Fung Decl. ¶ 7. Section 17 of that document described the grievance procedures

8   that must be followed and exhausted. *Id*. In his deposition, Del Castillo admitted he had seen a

9   copy of the PCCCD, although he believed it "was old." Supplemental Declaration of Amy Endo

10  [Dkt. No. 34], Ex A, Del Castillo Depo. Tr. 140. Del Castillo had the information he needed to

11  file and pursue his grievance. Any complaints about the new steady system cannot proceed in this

12  case because they have not been exhausted.

### V. NO VIOLATION OF THE DFR FOR FAILURE TO PURSUE THE GRIEVANCE

Finally, ILWU argues that no juror could find that ILWU breached its duty of fair representation when Local 34 declined to pursue Del Castillo's grievance. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1034 (9th Cir. 2016) ("the employee must establish that the union violated its duty of fair representation by failing to pursue the grievance to arbitration, or pursuing it arbitrarily."). Generally, a union may breach its DFR when it fails to adequately investigate a grievance, ignores it, or handles it in a perfunctory manner. *See, e.g., Starla Rollins v. Cmty. Hosp. of San Bernardino*, 839 F.3d 1181, 1186 (9th Cir. 2016) ("In order to avoid breaching the duty of fair representation, a Union must "conduct a 'minimal investigation' of a grievance that is brought to its attention.").[7]

---

new steady system are discriminatory, in his deposition Del Castillo described his claim against the union as being based on the union's failure to get a new system in operation. Del Castillo Depo. Trans. 197:5-24 ("Because the request system is still not eliminated."). I will nevertheless briefly address the claims made in the opposition regarding the new system.

[7] In handling a grievance, a union acts arbitrarily when it "ignores a meritorious grievance or processes it in a perfunctory fashion"; acts discriminatorily where there is "substantial evidence" of discrimination that is "intentional, severe, and unrelated to legitimate union objectives"; and acts in bad faith where there is "substantial evidence" of "fraud, deceitful action or dishonest conduct." *Jay v. Serv. Employees Int'l Union-United Health Care Workers W.*, 203 F. Supp. 3d

11

ILWU argues that at the time of Del Castillo's grievance, the undisputed evidence establishes that it was already undertaking reasonable efforts to eliminate the request system and implement the steady system, and there was no evidence to support Del Castillo's age discrimination allegations. Del Castillo points to no evidence that a reasonable juror could rely on to conclude that ILWU could have undertaken different efforts to implement the 2014 LOU, that ILWU ignored evidence regarding discrimination, or that ILWU otherwise acted in bad faith or a discriminatory manner when it failed to pursue his grievance.

Summary judgment is GRANTED on Del Castillo's DFR claim related to the handling of his February 2016 grievance.

## CONCLUSION

For the foregoing reasons, ILWU's motion for summary judgment is GRANTED and Judgment shall be entered in accordance with this Order.

**IT IS SO ORDERED.**

Dated: April 26, 2017

William H. Orrick
United States District Judge

---

1024, 1039–40 (N.D. Cal. 2016) (citing *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 301 (1971) and *Vaca v. Sipes*, 386 U.S. 171, 182 (1967)).

12